UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| YEXY GAME,<br><br>      **Plaintiff,**<br><br>-against-<br><br>LAFAYETTE GLASS COMPANY INC.<br>and HILLARY HULTEEN,<br><br>      **Defendants.** | Index No.: 1:23-cv07833 (CLP) |

**DEFENDANTS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT**

              Michael D. Yim, Esq.
              **FRANKLIN, GRINGER & COHEN, P.C.**
              *Attorneys For Defendants*
              666 Old Country Road, Suite 202
              Garden City, NY 11530-2013
              (516) 228-3131

**PRELIMINARY STATEMENT**

Defendants Lafayette Glass Company, Inc. ("Lafayette") and Hillary Hulteen (collectively, "Defendants") submit this reply brief in further support of their cross-motion for summary judgment to dismiss Plaintiff Yexy Game's ("Plaintiff") claims for Family Medical Leave Act ("FMLA") interference and retaliation. Lafayette executed a bona fide reduction of its workforce that, at worst, coincided with Plaintiff's leave. Plaintiff's leave status played no factor, negative or incidental, into Lafayette's decision to engage in layoffs or process improvements. There is no evidence of any animus against Plaintiff for taking leave. The evidence overwhelmingly concludes that Plaintiff's termination was sole determined on the basis of Lafayette's business needs. Indeed, Plaintiff's role elimination was textbook corporate redundancy.

Plaintiff's opposition is unreasonable and insufficient to defeat summary judgment. No reasonable jury would ignore and minimize Lafayette's bona fide downsizing and process improvement initiatives that commenced prior to Plaintiff's pregnancy and leave to infer a discriminatory/retaliatory motive or otherwise interfere with Plaintiff's rights under the FMLA. Specific to her, Plaintiff admits, and there are no material disputes of fact, that: 1) discussions concerning the elimination of the Plaintiff's role commenced prior to her pregnancy, Plaintiff's Counterstatement to Defendants' [56.1 Statement], dated February 14, 2025, Response No. 25 ("Pls. Response"), see also Response No. 65 (quoting Ms. Hulteen as testifying "we were pretty sure the role was going to have to be dissolved"; 2) process improvement initiatives related to her duties and started before Plaintiff took leave, Response Nos ; 33 (responding to statement citing Exhibit F (December 19, 2022 E-Mail) to the Declaration of Michael D. Yim, dated December 27, 2024), 3) her workload was "based off entering data for the most part and reaching out to the

field", Response No. 52, ; and 4) her work, whatever was remaining, was reallocated to more senior employees with greater responsibility over the functions, Response No. 50, 68-69.  Instead, Plaintiff's argument unreasonably fixates on the innocuous notion that work may be reallocated to other employees – implying that work must eliminated altogether to justify layoff.

## ARGUMENT

The Second Circuit holds that the right to reinstatement after FMLA leave "is not absolute." Sista v. CDC Ixis N. Am., Inc., 445 F.3d 161, 176 (2d Cir. 2006).  Irrespective of whether this is examined under the rubric of interference or retaliation, or whether the legal standard is *McDonnell Douglas* or mixed motive, summary judgment is warranted when there is no reasonable dispute of material fact that Plaintiff was subject to a bona-fide reduction in force.  See Sista v. CDC Ixis N. Am., Inc., 445 F.3d 161, 176 ("regardless of whether [plaintiff] asserts an "interference" or a 'retaliation' claim, he cannot show that CDC considered his FMLA leave and request to return a negative factor in its decision to terminate him").  Indeed, Plaintiff cannot prove pretext or that her leave played a "negative" role.  The analysis and conclusion remain the same – it cannot be reasonably disputed that Plaintiff's role elimination was inevitable and solely due to bona-fide downsizing and process improvement initiatives.

### Defendants Met Their Burden Because the *Numbers Don't Lie*

Plaintiff admits that Lafayette initiated discussions on her layoff prior to her pregnancy. Plaintiff further admits and does not dispute Ms. Hulteen's testimony that Lafayette "[was] *pretty sure the role was going to have to be dissolved*" (emphasis added by Plaintiff) prior to Plaintiff's leave. Response No. 65.  After that, Lafayette downsized every aspect of its business.  Response No. 27.  When Plaintiff took leave, Lafayette reached its lowest headcount totals of field employees, field operations team members and salaried employees. Response No. 18 (citing

headcount chart). Plaintiff does not provide any evidence to demonstrate to dispute these numerical details or otherwise show that she should have been immune or exempt from downsizing considerations. Plaintiff's announcement of her pregnancy, commencement of leave and termination all correlate to key timeline events of Lafayette's workforce contractions. Response No. 18 (citing headcount chart). A reasonable jury will exclusively associate Plaintiff's layoff and the timing of her termination with Lafayette reaching its lowest headcount numbers.

Indeed, the Second Circuit made clear that FMLA claims (interference or retaliation) fail in the face of substantial evidence of a bona-fide layoff where other employees are similarly affected. See Thomsen v. Stantec, Inc., 483 F. App'x 620, 623 (2d Cir. 2012) (affirming dismissal by summary judgment of Plaintiff's FMLA claims because he failed to "provide[d] meaningful evidence refuting" that "Plaintiff's work group experienced a significant slowdown in projects in 2008."). This Court has further made clear that role redundancy is sufficient grounds to terminate employment as part of a bona fide reduction in force. See Choi v. Ferrellgas, Inc. 2020 WL 122976, at *10 (E.D.N.Y. 2020) (holding that summary judgment was appropriate when the Company's "justification of needing to make reductions in staff as part of the company-wide RIFs, a fate that multiple co-workers in the Plaintiff's office suffered alongside her").

Plaintiff's inclusion in a company-wide downsizing is fastened to the nature of her work. Plaintiff admits that "[a] large part of Plaintiff's responsibilities was to manage and maintain the schedule for the field employees and maintain and enter payroll information for Lafayette's field employees." Accordingly, data entry consumed a large part of Plaintiff's time. Response No. 49. There is no rational doubt that the amount of "data entry" performed by Plaintiff depends on the number of "field employees" employed by Lafayette. The field employee headcount contracted by 56-64% from the time Plaintiff announced her pregnancy to the time she took leave. Response

No. 18. Plaintiff's opposition is deafeningly silent on any rebuttal to Defendants' factual showing that there was simply not enough work because there were not enough "field employees" at Lafayette to occupy a full time position to schedule or to enter payroll.

Defendants' conclusions are further firmly corroborated by Plaintiff's admission that the "number of Field Supervisors varied depending on the number and size of projects in which Lafayette was retained to perform work". Response No. 10. In January 2022, Lafayette employed four field supervisors. Response No. 21 (denying only to the extent of the stated reasons for termination of 3 out 4 field supervisors not whether the roles were eliminated). After April 2023, Lafayette only employed one field supervisor. Response No. 22 (correctly responding one field supervisor remained out of four). Lafayette did not replace her or three other field supervisors during her leave and after her layoff. Yim Dec., Ex. O (2024 Organizational Chart). Only two members of the field operation team remained, her supervisor Daniel Cordero and one field supervisor, Michael Zahralban. Yim Dec., Ex. O (2024 Organizational Chart). The headcount alone suggests that Lafayette was engaged in substantially less or smaller projects overall. Thus, a separate scheduling manager became unnecessary.

Most notably, Anthony Ambrosino, a field supervisor, was laid off on April 28, 2023 – three weeks after Plaintiff took leave. At this point, Lafayette already reached its lowest headcount of field employees. Plaintiff's layoff was the last role elimination within the field operations team and occurred at the end of her leave and less than four months after Mr. Ambrosino was laid off. Affidavit of Melissa DiDiego, Dated December 18, 2024, Exs. B, C.

Plaintiff's layoff was not exceptional by any means. It was part of an ongoing, company-wide downsizing initiative where nearly half of Lafayette's salaried workforce was eliminated from the first quarter of 2022 through Plaintiff's layoff in the third quarter of 2023. DiDiego Aff.,

Exs. A-C. Multiple departments were similarly stripped down to the bare essential staffing levels. No evidence indicates that Plaintiff was exempt from the downsizing or whether the role of Scheduling Manager would have survived elimination.

**There is no Reasonable Dispute of Material Fact that Lafayette's Process Improvements Rendered Plaintiff's Job Further Expendable**

Plaintiff's opposition proposes an unreasonably exceptional and isolated description of Lafayette's process improvement initiatives. As demonstrated above, Plaintiff's workload was primarily impacted by company-wide downsizing in the field and field operations team. Lafayette's bona fide process improvement initiatives, which Plaintiff admits commenced prior to her leave, constitute <u>further</u> not separate support for the decision to lay off Plaintiff because it establishes a concrete intention and plan to reduce labor needs through operational changes. Plaintiff fails to present any evidence to raise a minimal inference that completion of process improvements was a material precondition to Plaintiff's layoff. The process improvement plan served as a reason for layoff in <u>tandem</u> with Lafayette's workforce contraction.

Plaintiff's position is dependent on the timing of when Lafayette implemented certain process improvements. The timing is, however, not material because Plaintiff does not present evidence that Plaintiff's role was essential to implement or execute process improvements for the goal of eliminating her own role or reducing labor needs. Timing of her layoff is tied to when the field and field operations workforce were contracted to its lowest levels. The Second Circuit has made clear "it is not the function of a fact-finder to second-guess business decisions or to question a corporation's means to achieve a legitimate goal," and that "the reasons tendered" by the company "need not be well-advised, but merely truthful". Dister v. Continental Grp., Inc., 859 F.2d 1108, 1116 (2d Cir.1988). Here, there is no reasonable dispute that Lafayette and its evidence

demonstrate a "truthful" intent to eliminate Plaintiff's role as redundant and ultimately unnecessary as part of the company's process improvement initiatives and workforce contractions.

Plaintiff admits that Lafayette's goal was to eliminate data entry redundancies – specifically in areas directly affecting Plaintiff's specific job functions. Response Nos. 32, 36. Plaintiff further admits that these process improvements must occur prior to the launch of Acumatica – a software platform to manage Lafayette's operations. Response No. 34. Acumatica was initially scheduled to be launched by March 2023 but was mundanely delayed until March 2024. Response No. 33. In short, much of Plaintiff's work functions were always subject to and in the process of elimination at the time of Plaintiff's leave.

Nevertheless, there is no material dispute of fact that other process improvements did, in fact, occur prior to Plaintiff's layoff – namely, manpower scheduling. First, scheduling duties were absorbed by her own supervisor, Daniel Cordero. Response No. 50. Assigning manpower scheduling to her supervisor proves that the supervisor no longer needed assistance with scheduling – the most fundamental process improvement of all. Second, Plaintiff's process of scheduling manpower through calendaring of each employee was discarded. Daniel Cordero, her supervisor, simply told field employees "where to go." Response No. 70. Coupled with the decline of the field employee and field operations headcount, scheduling became so much less time-consuming that the head of the field operations department could manage the work on his own.

**Plaintiff's Unreasonable Fixation on Redistribution of Work Fails to Demonstrate a Reasonable Dispute of Material Fact**

Plaintiff's opposition boils down to two arguments. First, Plaintiff's proposes that an employer is obligated to reallocate work back to an employee after leave. Second, Plaintiff is prohibited from measuring the necessity of a role during a bona-fide company downsizing while

the affected employee is on leave. These arguments must fail because Plaintiff's position is asserted without any evidence to set forth any understanding of Lafayette's business conditions at the time of her leave. Malone v. Greco, No. 92-CV-178S, 1995 WL 222052, at *12 (W.D.N.Y. Jan. 21, 1995) ("it is doubtful that given the circumstances attendant to this statement that such evidence alone would be sufficient to create a material issue of fact and defeat defendants motion for summary judgment"). Nothing corroborates or supports the hypothesis that Defendants somehow exploited Plaintiff's leave to justify her termination. Without these circumstances, Defendants fail to set forth reasonable and nonspeculative evidence sufficient to defeat summary judgment.

Indeed, Plaintiff's opposition is incomprehensibly vague as to the circumstances surrounding Lafayette's business operations at the time Plaintiff was terminated. It appears that Plaintiff is measuring Lafayette's decision factoring the extent and nature of Lafayette's downsizing at the time of her leave. Defendants met their burden by demonstrating a bona-fide, factually indisputable reduction in force. Defendants also established that her role "was no longer needed before [Lafayette] found out she was pregnant." Response No. 70. The unambiguous and uncontested facts demonstrate that from the start of Plaintiff's pregnancy and until her layoff, Lafayette's field operations and headcount contracted to such a degree that no reasonable factfinder would believe that business and operation remained sufficient to convince Lafayette to preserve her role. The change in Lafayette's business and operations conditions, however, mandated Lafayette to eliminate Plaintiff's role as it did throughout the field operations department and across the entire company.

As demonstrated above, Plaintiff's supervisor no longer needed scheduling assistance due to the decreased number of field employees and eliminating the calendaring aspect of scheduling.

The bulk of Plaintiff's payroll functions were delegated to the payroll administrator – the role ultimately responsible for managing Lafayette's payroll. Response No. 68. Plaintiff's previous payroll duties were clearly reduced by reduction of the number employees. Even assuming "process improvements" for payroll data entry were not implemented by the time of Plaintiff's leave, the payroll administrator was capable of handling Plaintiff's payroll duties (she would be ultimately responsible for) without further assistance. Plaintiff's duties were not allocated to employees on similar levels. The fact that the work was allocated to more senior level employees is corroborating evidence that Plaintiff's role was entirely redundant and unnecessary.

While Plaintiff preoccupies their opposition with framing a "final decision" as an isolated event. The context and circumstances leading up to the final decision are all consistent laying off Plaintiff as part of company-wide initiative. The redistribution of Plaintiff's work occurred four months before Plaintiff's layoff. Defendant could have laid her off then and not waited until she completed leave. However, Defendants chose to allow Plaintiff to finish her leave and maximize benefits. There are no circumstances or evidence to support an inference that Plaintiff's leave played a factor, let alone negative factor, in her termination. Her leave merely occurred at the same time Lafayette underwent substantial change.

**All Supplemental Claims Should Be Dismissed for Lack of Jurisdiction if Plaintiff's Federal Claims are Dismissed**

Plaintiff asks this court to move forward to trial on state law claims in the event Plaintiff's federal claims are dismissed. These claims are part of this litigation through supplemental jurisdiction. Defendants do not take a position whether this Court, in the exercise of its discretion, seeks to retain jurisdiction. However, Defendants do not waive any rights to assert collateral

estoppel, issue preclusion or claim preclusion applicable to remaining state law claims in the event summary judgment is reached.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant their cross-motion for summary judgment, deny Plaintiff's motion for partial summary judgment, and dismiss Plaintiff's FMLA interference claim with prejudice.

Dated: March 6, 2025

                                              Respectfully submitted,
                                              /s/ Michael Yim
                                              Michael Yim, Esq.
                                              Franklin, Gringer & Cohen, P.C.
                                              Attorneys for Defendants
                                              666 Old Country Road, Suite 202
                                              Garden City, New York 11530
                                              (516) 228-3131

Cc: Plaintiff via ECF